**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADMIR GUSENKOV, | No. C 09-04747 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION TO DISMISS AND GRANTING LIMITED LEAVE TO AMEND** |
| WASHINGTON MUTUAL BANK, FA; CALIFORNIA RECONVEYANCE COMPANY; and DOES 1 thru 250 | |
| Defendants. / | |

Defendants' motion to dismiss the amended complaint is scheduled for a hearing on June 25, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds that the matter is appropriate for resolution without oral argument, and VACATES the hearing. The Court also VACATES the case management conference set for June 25, 2010 at 2:30 pm. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss the amended complaint. The Court GRANTS plaintiff limited leave to amend.

**BACKGROUND**

On August 25, 2009, plaintiff[1] filed a *pro se* complaint in the Superior Court of the State of California for the County of Contra Costa on August 25, 2009. Pursuant to 28 U.S.C. § 1446, defendants removed the case to this Court asserting federal question jurisdiction because the complaint

---

[1] The original complaint was filed on behalf of Vladimir and Olga Gusenkov. The amended complaint only names Vladimir Gusenkov as a plaintiff. However, plaintiff's opposition to the defendants' motion to dismiss the amended complaint refers to both Vladimir and Olga Gusenkov as the plaintiffs.

alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601.

Plaintiff's claims arise out of a mortgage secured on plaintiff's property at 1873 Grenada Dr., Concord, California. On or about December 1, 2003, plaintiff obtained a mortgage in the amount of $250,000 from Washington Mutual Bank. Amend. Compl. Ex. 1.[2] The Deed of Trust was notarized on December 2, 2003, and recorded in the Contra Costa County Recorder Office on December 9, 2003. *Id.* Ex. 1.[3] A Notice of Default and Election to Sell Under Deed of Trust was recorded on January 28, 2009. *Id.* Ex. 2. Plaintiff claims that defendants engaged in fraud and various statutory violations in connection with the 2003 loan, and also that defendants have attempted to wrongfully foreclose on the property.

In an order filed February 26, 2010, the Court dismissed the complaint and granted plaintiff leave to amend. The amended complaint alleges claims for violations of TILA, the California Rosenthal Act, negligence, the Real Estate Settlement Procedures Act, California Civil Code § 2923.6, breach of fiduciary duty, fraud, California Business & Professions Code § 17200, and breach of the implied covenant of good faith and fair dealing. Defendants have moved to dismiss the amended complaint as untimely and for failure to state a claim.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

---

[2] The amended complaint states that plaintiff entered into the mortgage in January 2007. Amend. Compl. ¶ 21. However, the loan documents attached to the amended complaint show that the Deed of Trust is dated December 1, 2003, and that the document was recorded on December 9, 2003. *Id.* Ex. 1. Further, the original complaint alleged, consistent with the loan documents, that the loan originated in December 2003.

[3] Plaintiff obtained additional financing from Washington Mutual on January 26, 2007 in the amount of $244,750, bringing the total encumbrance to $494,750. Original Compl. ¶ 8. The amended complaint does not assert any claims related to the 2007 loan.

2

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.   Claims against JP Morgan**

Defendant JPMorgan moves to dismiss plaintiff's claims on the ground that JP Morgan did not assume any liability stemming from claims by Washington Mutual's borrowers. The 2003 loan was originated by Washington Mutual.

On September 25, 2008, the Office of Thrift Supervision ("OTS"), which regulates the operations of federally chartered savings associations, closed Washington Mutual Bank and appointed FDIC as Receiver for WMB. Docket No. 31, Ex. 4. When the FDIC is appointed as Receiver, it succeeds to "all rights, titles, powers and privileges of" the failed institution, and may "take over the assets of and operate" the failed institution with all of the powers thereof. 12 U.S.C. §§ 1821(d)(2)(A)(I), 1821(d)(2)(B)(I). The FDIC-Receiver's powers under FIRREA include the power

3

to transfer assets and liabilities of the failed institution through purchase and assumption agreements. *See id*. § 1821(d)(2)(G)(I).[4] On September 25, 2008, the same date that the FDIC was appointed as Receiver for WMB, the bulk of WMB's assets were transferred to JPMorgan Chase Bank pursuant to a Purchase and Assumption Agreement entered between FDIC-Receiver, the FDIC in its corporate capacity, and JPMorgan Chase Bank. Docket No. 31, Ex. D (Purchase and Assumption Agreement). Article 2.5 of that Agreement expressly provides that JPMorgan Chase Bank did not assume the potential liabilities of WMB associated with claims of borrowers:

> **2.5** **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

*Id*. at 9. Thus, "by the terms of the P&A Agreement, JPMorgan Chase expressly disclaimed assumption of liability arising from borrower claims . . . [t]his section leaves the FDIC as the responsible party with respect to those claims." *Cassese v. Washington Mutual Bank*, 05 CV 2724 (ADS) (ARL), slip op. at 6 (E.D.N.Y. Dec. 22, 2008) (interpreting same P&A Agreement) (attached at Docket No. 70, Ex. C); *see also Payne v. Security Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir. 1991) ("Absent an express transfer of liability by the [Receiver] and an express assumption of liability by Security Federal, FIRREA directs that [the Receiver] is the proper successor to the liability at issue here."). Accordingly, to the extent plaintiff's claims arise out of the origination of the 2003 loan, JPMorgan is not liable, and these claims are DISMISSED WITHOUT LEAVE TO AMEND.

---

[4] The FDIC cites 12 U.S.C. § 1821(d)(2)(F)(i) for the FDIC's authority to transfer assets and liabilities. However, Section 1821 was amended on July 30, 2008, and § 1821(d)(2)(F) no longer contains subsection (i). Section 1821(G)(i)(II), which provides that "The Corporation may, as conservator or receiver – subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer," would appear to be the source of the FDIC's authority to transfer assets and liabilities.

JPMorgan also argues that to the extent that plaintiff's claims arise out of the foreclosure of plaintiff's property, those claims fail because plaintiff does not allege, nor can plaintiff establish, that JPMorgan was involved in the allegedly wrongfully initiated foreclosure. JPMorgan asserts that this is so because the Notice of Default was recorded eight months before JPMorgan acquired Washington Mutual's assets. However, the Notice of Default submitted in defendants' Request for Judicial Notice is dated January 28, 2009, several months after JPMorgan acquired Washington Mutual's assets. Docket No. 31, Ex. 2. Accordingly, the Court cannot conclude that plaintiff cannot state a claim against JPMorgan arising out of the foreclosure. However, the Court agrees with defendant that as currently plead, the amended complaint does not sufficiently allege facts regarding acts taken by JPMorgan related to the foreclosure. Plaintiff is granted limited to leave to amend to allege claims, supported by factual allegations, against JPMorgan related to the foreclosure.

## II.     TILA

The amended complaint seeks rescission and damages under TILA. A claim for rescission under TILA has a statute of limitations of three years, 15 U.S.C. § 1635(f), and a claim for damages is subject to a one year statute of limitations. 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). The Court's February 26, 2010 order informed plaintiff that the TILA claims appeared to be untimely because the loan transaction occurred in December 2003. The amended complaint does not allege any basis for equitable tolling, and plaintiff's opposition does not address defendants' timeliness arguments.

The Court concludes that plaintiff's TILA claims are untimely, and DISMISSES these claims WITHOUT LEAVE TO AMEND.

## III.    RESPA

The amended complaint alleges a new claim under the Real Estate Settlement Procedures Act ("RESPA"). The amended complaint alleges that defendants violated Section 2605(e)(2) of RESPA by "failing and refusing to provide a written explanation or response to Plaintiff's Qualified Written

5

Request." *Id.* ¶ 75. The complaint also alleges that defendants "violated RESPA at the time of closing on the sale of the property by failing to correctly and accurately comply with disclosure requirements." Amend. Compl. ¶ 74. The complaint does not identify which provision of RESPA defendants allegedly violated by failing to comply with disclosure requirements.

**A.     § 2605(e)(2)**

Section 2605 of RESPA relates to servicing of mortgage loans and administration of escrow accounts. Section 2605(e)(2) provides,

> (e) Duty of loan servicer to respond to borrower inquiries
>
> . . .
>
>> (2) Action with respect to inquiry
>>
>> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–
>>
>>> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>>>
>>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>>>
>>>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>>>
>>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>>>
>>> (c) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>>>
>>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>>>
>>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

Defendants move to dismiss plaintiff's § 2605(e)(2) claim on several grounds. First, defendants note that this section only imposes a duty on a loan servicer to respond to borrower inquiries, yet the complaint fails to allege that any defendant was a loan servicer. A "loan servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *Id*. at § 2605(i)(2). The complaint alleges that "Plaintiff is not certain at this time exactly which of Defendants was actually the servicer of the loan at any given time. However, due to the conspiratorial nature of the misdeeds alleged herein, and also due to Defendants' general failure to properly advise Plaintiff as to the roles and identities of the various entities that were purportedly handling his loan at any given time, these allegations are made as to all Defendants." Amend. Compl. ¶ 73. These allegations are insufficient to state a claim against any defendant under § 2605(e)(2). *See Gonzalez v. First Franklin Loan Servs.*, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, at *12 (E.D. Cal. Jan. 11, 2010) ("Plaintiff's inability to allege whether HLS was the loan servicer at the time in question is troubling because under RESPA § 2605, only a loan servicer has a duty to respond to a borrower's inquiries."). If plaintiff sent an inquiry to a defendant triggering the defendant's duty to respond under § 2605(e)(2), plaintiff presumably knows the identity of the defendant or defendants to whom he sent the inquiry.

In addition, although not raised by defendants, the complaint is insufficient because plaintiff does not allege that the inquiry he sent any of the defendants constitutes a "qualified written request" as defined by the statute. Section 2605 defines "qualified written request" as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that– (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The complaint does not contain any information about the inquiry that plaintiff allegedly sent to defendants, nor does the complaint allege when plaintiff sent the request, which is relevant to determining when the claim accrued and whether the claim is timely. *See* 12 U.S.C. § 2614 (three year statute of limitations applies to § 2605 claims).

7

Defendants also contend that plaintiff has failed to state a claim under § 2605 because he has not adequately alleged damages. In an individual case such as this one, a plaintiff may recover any actual damages as a result of the failure to respond to a qualified written request, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). Here, the complaint only contains conclusory allegations that defendants caused plaintiff damages and that defendants have engaged in a pattern or practice of noncompliance. *See* Amend. Compl. ¶¶ 76-77. Plaintiff has not plead any facts regarding how plaintiff was actually harmed by defendants' alleged failure to comply with Section 2605(e), nor does the complaint allege any facts showing that defendants have a pattern or practice of noncompliance.

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiff's claim under 12 U.S.C. § 2605(e)(2) with leave to amend. If plaintiff chooses to amend this claim, plaintiff must be able to allege (1) that a defendant or defendants were "loan servicers" under the statute, (2) facts showing that plaintiff sent a "qualified written request" to a defendant, as well as the date that request was made, and (3) facts showing that plaintiff was damaged, and/or facts showing that defendants have a pattern or practice of noncompliance.

### B.    RESPA "disclosure requirements"

The complaint alleges that "Defendants violated RESPA at the time of closing on the sale of the Property by failing to correctly and accurately comply with disclosure requirements." Amend. Compl. ¶ 74. The complaint does not identify which section of RESPA defendants allegedly violated.

This omission is problematic for several reasons. First, only some sections of RESPA contain a private right of action. RESPA explicitly provides a private right of action for violations of Sections 2605, 2607 and 2608. *See* 12 U.S.C. §§ 2605, 2607, 2608; *see also* 12 U.S.C. § 2614 (providing statutes of limitations for claims brought under Sections 2605, 2607 and 2608). Numerous courts have held that because Congress expressly provided private remedies for those sections of the Act, there is no implied private right of action for other sections of RESPA that do not contain language explicitly recognizing a private remedy. *See State of Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1301 (5th Cir. 1995)

8

(no private right of action under Section 2609); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir.1982) (same); *McAnaney v. Astoria Financial Corp.*, 357 F. Supp. 2d 578, 591 (E.D.N.Y. 2005) (no private right of action under Sections 2609 and 2610); *see also Hardy v. Regions Mortgage Inc.*, 449 F.3d 1357, 1360 (11th Cir. 2006) (no private right of action under 24 C.F.R. § 3500.17 because regulation promulgated under Section 2609 of RESPA); *Currey v. Homecomings Fin. LLC*, C 09-276 PJH, 2009 WL 1227010, at *6 (N.D. Cal. May 1, 2009) (no private right of action under Sections 2603 or 2604). Thus, plaintiff can only bring a claim under Sections 2605, 2607 or 2608.

Second, any claims regarding failure to provide disclosures at the time of the 2003 closing would appear to be time-barred. The statute of limitations for claims under Section 2605 is three years, and claims brought under Sections 2607 or 2608 are subject to a one year statute of limitations. 12 U.S.C. § 2614. The Court DISMISSES this claim WITHOUT LEAVE TO AMEND.

### IV. State law claims

In addition to the TILA and RESPA claims, plaintiff has alleged a number of state law claims. Based upon the Court's dismissal of the TILA and RESPA claims, and the limited leave to amend granted on the RESPA § 2605(e)(2) claim, it is unclear whether plaintiff will be able to state a federal claim. Defendants removed this action based on federal question jurisdiction, and if plaintiff is unable to state a federal claim, the Court would be inclined to remand this action to state court pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court will not engage in a detailed analysis of plaintiff's state law claims. However, the Court does provide the following guidance to plaintiff regarding the state law claims, in the event plaintiff chooses to pursue these claims.

#### A. Unfair Debt Collection Practices

The amended complaint alleges that defendants violated California's Rosenthal Fair Debt Collection Practices Act, Cal Civ. Code § 1788. The Rosenthal Act serves to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1026 (N.D. Cal.2006) (citing Cal. Civ. Code § 1788.1) (emphasis omitted). The Act

9

only governs the conduct of a "debt collector," which under the statute is defined as "any person who, in the ordinary course of business, regularly, and on behalf of himself or herself . . . engages in debt collection." Cal Civ. Code. § 1788.2. The complaint does not allege that any defendant is a "debt collector" within the meaning of the Act. Moreover, "foreclosure pursuant to a deed of trust does not constitute debt collection under the [Rosenthal Act]." *Gardner v. American Home Mortg. Serv. Inc.*, 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010). Thus, to the extent plaintiff's Rosenthal Act claims arise out of collection efforts related to the mortgage loan, they are outside the scope of the Rosenthal Act.

### B. Negligence

Under California law, the elements of an action for negligence are the existence of a duty, breach of that duty, causation between the defendant's act or omission and the plaintiff's injuries, and damages. *Merrill v. Navegar, Inc.*, 110 Cal. Rptr. 2d 370, 379 (Cal. Ct. App. 2001). "[P]arties to a contractual relationship, such as a mortgagor and mortgagee, cannot bring a tort claim [for negligence] unless a legal duty independent of the contract itself has been violated." *Gaitan v. Mortgage Elec. Reg. Sys.*, No. 09-1009, 2009 U.S. Dist. LEXIS 97117, at *8 (C.D. Cal. Oct. 5, 2009) (citing *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102-03 (1995)). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991). Accordingly, if plaintiff wishes to pursue a claim of negligence, plaintiff must allege a "legal duty independent of the contract" that has been violated.

### C. California Civil Code § 2923.6

The amended complaint alleges a claim under California Civil Code § 2923.6. That section, titled, "Legislative findings and declarations; pooling and servicing agreements; loan modification or workout plan," provides:

> (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the

10

> pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:
>
> > (1) The loan is in payment default, or payment default is reasonably foreseeable.
> >
> > (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
>
> (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.
>
> (c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

Cal. Civ. Code § 2923.6.

If plaintiff wishes to pursue a claim under this section, plaintiff must address the legal authority cited by defendants that there is no private right of action under this statute. *See Farner v. Countrywide Home Loans*, No. 08cv2193 BTM (AJB), 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009).

### D.     Breach of fiduciary duty

The amended complaint alleges a claim for breach of fiduciary duty. The Court previously dismissed this claim without leave to amend. Plaintiff may not reallege this claim.

### E.     Fraud

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Gil v. Bank of Am.*, *N.A.*, 42 Cal. Rptr. 3d 310, 317 (Cal Ct. App. 2006). Rule 9(b) of the Federal Rules of Civil Procedure requires a party proceeding in federal court to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). When allegations of fraud are made about multiple defendants, a plaintiff "must provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (internal quotation marks and citation omitted). If plaintiff

wishes to pursue a fraud claim, plaintiff must allege all of the elements of the fraud, including specifically alleging *what* misrepresentations were made, when, and by whom.

### F.     California's Unfair Competition Law Claims

The UCL has a four year statute of limitations. *See* Cal. Bus & Prof Code. § 17208. Any UCL claim related to the origination of the loan in 2003 is untimely. Further, unless plaintiff can identify an unlawful, unfair and/or fraudulent business practice, there is no predicate for the UCL claim.

### G.     Breach of Implied Covenant of Good Faith

Under California Civil Procedure Code section 337, a plaintiff's action must be brought within four years for a claim arising from a "contract, obligation, or liability founded upon an instrument in writing." An exception is provided when a plaintiff seeks rescission based upon fraud or mistake, and under such circumstances "the time does not begin to run until discovery by the aggrieved party of the facts constituting fraud or mistake. *Id*. at § 337(3). Under the statute of limitations the claim for breach of implied covenant of good faith expired in 2007. Plaintiff must be able to truthfully and specifically allege that he discovered the facts constituting fraud or mistake after the loan transaction.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss and GRANTS plaintiff LIMITED leave to amend. (Docket No. 30). If plaintiff wishes to amend the complaint, he must file an amended complaint no later than **July 16, 2010**.

**IT IS SO ORDERED.**

Dated: June 24 , 2010

SUSAN ILLSTON
United States District Judge

12